Filed 5/30/24  Ma v. Cao CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| YUE MA et al., | B329293 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 21STCV43979) |
| v. | |
| LINGHAN HANK CAO et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gail Killefer, Judge.  Affirmed.

KJC Law Group, Kevin J. Cole and W. Blair Castle for Defendants and Appellants.

Law Offices of Paul P. Cheng, Cameron H. Totten, Paul P. Cheng, Gene S. Lizaso and Suleiman Oladeinde for Plaintiffs and Respondents.

_____

The trial court issued a preliminary injunction after plaintiffs showed that defendants were removing assets from their jointly owned business.  Defendants argue that the injunction is void because plaintiffs did not post an undertaking. (Code Civ. Proc., § 529.)[1]  They also challenge the preliminary injunction on the merits.

We conclude that defendants waived their right to an undertaking, and the court did not abuse its discretion by issuing the preliminary injunction.  Plaintiffs are likely to prevail on their breach of contract claim, and, on balance, they will suffer the greater harm if defendants transfer, sell or hide corporate assets.  We affirm.

## FACTS AND PROCEDURAL HISTORY
### Plaintiffs' Lawsuit

Plaintiffs filed suit in 2021.  Their third amended complaint (TAC) describes the dispute.  Plaintiffs Yue Ma and Lihong Zhao (through their companies Sunny West Coast Co. and Hua Ming Technology Co.) own a 35 percent interest and defendant Linghan "Hank" Cao owns a 65 percent interest in Ideal International Investment (Ideal).  Ideal is a trucking company formed in 2018.  The owners constitute Ideal's board of directors.

The parties agreed that Ideal would operate for three years, at which point they had to decide whether to continue the business.  At the three-year mark, no decision was made. Without a decision to continue, the parties' agreement required dissolution.  Instead of dissolving the business, Cao continued to

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

operate Ideal, removed assets, and the parties had a breakdown in their relationship. Plaintiffs assert claims for breach of contract; breach of fiduciary duty; conversion; unfair business practices; and to dissolve Ideal.[2]

## Ideal's Cross-complaint

In a cross-complaint, Ideal alleges that cross-defendants unlawfully took corporate funds and are creating a competing business. Specifically, Ideal's chief operating officer Jiafeng Yuan (the husband of plaintiff Ma) took wrongful possession of Ideal's funds in 2021.

Cao called for a board meeting in October 2021. Cross-defendants came with counsel, objected to the lack of formal notice, refused to discuss Ideal, then filed suit. Yuan allegedly threatened Cao with a hammer and falsely claimed Cao threatened him with a gun, leading to criminal charges. Cross-defendants are taking Ideal's assets, customers, and employees. The pleading asserts claims for financial misappropriation; breach of fiduciary duty; and unfair competition.

## Plaintiffs Request a Preliminary Injunction

Plaintiffs assert that they have an agreement with Cao to operate a trucking company, signed October 13, 2018 (the Agreement). Ma and Zhao invested $100,000 and $300,000. Cao invested $50,000 and five trucks.

The Agreement states, "The Company's operating term is tentatively set for three years. Upon expiration of the three-year term, if no two or more investors request for an extension, the Company will dissolve." Further, "After the Company declares

---

[2] In a request for judicial notice, defendants note that plaintiffs later omitted their claim for unfair practices.

its termination of operation, the board of directors will appoint personnel to liquidate the Company's properties. If there are assets available for distribution after the debts are repaid, the remaining assets shall be distributed to the investors according to the ratio of shareholding."

In 2021, the parties failed to reach a consensus to continue Ideal. Yuan saw Cao load forklifts onto a truck at Ideal's warehouse in California to ship them out of state. Cao allegedly pulled a gun on Yuan and threatened to kill him and his family. Ma sought an injunction to preserve the status quo until Ideal can be dissolved.

Plaintiffs argued that they will succeed on the merits. Cao continues to operate Ideal without his co-owners' consent, though the Agreement expired in 2021. Cao's transfer of equipment harms plaintiffs: He is depleting corporate assets and they do not know where he is secreting them. Plaintiffs will suffer the greater injury if Ideal's assets disappear.[3]

### Defendants Oppose an Injunction

Defendants argued that plaintiffs failed to show irreparable harm with competent testimony. Cao did not breach the Agreement by continuing to operate Ideal because the Agreement is vague. Plaintiffs did not prove that they have standing to sue, or an unfair business practice occurred, or that persistent fraud or mismanagement justifies dissolving Ideal. Dissolving Ideal would harm Ideal, Cao, and employees in California, Tennessee,

---

[3] In December 2021 and January 2022, the court found no need to grant plaintiffs' ex parte application after defense counsel agreed that no trucks would be sold pending a full hearing.

4

and Georgia.  It would impact businesses that rely on Ideal to move goods around the country.

Cao declared that the parties discussed the Agreement and agreed to continue operating Ideal.  Cross-defendant Yuan recently retained funds received from a client instead of depositing them in a company bank account.  The opposition papers do not mention any need for an undertaking.

## Plaintiffs' Reply

Plaintiffs replied that no agreement extends the operations of Ideal past October 2021.  Defendants are admittedly still operating the company.  Cao is depleting Ideal's assets by moving equipment out of state.  Plaintiffs will be obliged to file suit in multiple states to recoup assets.

## Defendants' Supplemental Opposition

While plaintiffs' request for an injunction was pending, the court sustained defendants' demurrers.  It continued the hearing on the injunction while plaintiffs amended their pleading, and authorized the parties to submit supplemental briefing.

In supplemental papers, defendants argued that plaintiffs cannot prevail on their claims and have not shown harm. Though Yuan saw Cao loading forklifts onto a truck at Ideal's California warehouse, there is no proof the equipment was taken out of state; even if it was, this is not evidence of wrongdoing because Ideal operates warehouses in other states and moves equipment among them.  The status quo is not in jeopardy because there is no evidence that defendants have sold assets. Ideal will suffer injury if an injunction shuts down its business. Defendants also asserted, "Plaintiffs have failed to provide an undertaking for damages," citing section 529.

5

In support of the supplemental opposition, Cao declared that Ideal employs 70 people in three states, transports goods throughout the country daily, and routinely moves assets among its warehouses. Cao has not improperly moved assets or funds. He averred, "Each of Ideal's shareholders explicitly agreed the company would continue operating—and there were numerous requests to do so."

**Plaintiffs' Supplemental Reply**

Plaintiffs reiterated that Cao is transferring or selling Ideal's assets to reduce the company's value or hide its assets, and prevent plaintiffs from receiving the fair market value of their investment. Defendants claim not to have a list of equipment owned by Ideal; therefore, it is impossible for plaintiffs to know if defendants are selling assets. Allowing Ideal to continue operating violates the Agreement. Plaintiffs did not address the need for an undertaking.

**The Trial Court's Ruling and Order**

After a hearing in April 2023, the court granted a preliminary injunction. It found that plaintiffs are likely to prevail on their breach of contract claim, and showed they will suffer greater harm because Cao was moving assets out of Ideal that cannot be traced and could bankrupt Ideal. The court's minute order does not mention the need for a bond. Defendants did not challenge the court's tentative or final ruling by asking it to impose an undertaking.

On May 4, 2023, the court enjoined defendants from (1) selling, distributing, moving or transferring any and all assets, equipment, money, inventory, or personal and real property belonging to Ideal, and (2) using any assets, equipment, inventory, money, or personal or real property belonging to Ideal.

6

The court ordered defendants to return all assets, equipment, money, inventory, personal or real property belonging to Ideal taken on or after October 14, 2021.  The order does not contain any requirement of a cash bond or undertaking.

## DISCUSSION

### 1. Appeal and Review

A preliminary injunction is an appealable order.  (§ 904.1, subd. (a)(6); *Ezer v. Fuchsloch* (1979) 99 Cal.App.3d 849, 856–857.)  The appellant has the burden of showing an abuse of discretion, such that the ruling "exceeds the bounds of reason or contravenes the uncontradicted evidence." (*Smith v. Adventist Health System / West* (2010) 182 Cal.App.4th 729, 739–740 (*Smith*).)  The substantial evidence standard applies to the trial court's resolution of disputed facts, which are viewed in the light most favorable to its ruling.  (*Id.* at p. 740.)

### 2. Failure to Require or Post an Undertaking

An undertaking is required when the trial court grants an injunction.  (§ 529.)[4]  The undertaking is intended to compensate a party who is wrongly enjoined, if it is ultimately determined that the plaintiff was not entitled to an injunction.  (*Top Cat*

---

[4] "On granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction.  Within five days after the service of the injunction, the person enjoined may object to the undertaking.  If the court determines that the applicant's undertaking is insufficient and a sufficient undertaking is not filed within the time required by statute, the order granting the injunction must be dissolved."  (§ 529, subd. (a).)

*Productions, Inc. v. Michael's Los Feliz* (2002) 102 Cal.App.4th 474, 478.)  The court estimates the harmful effect the injunction is likely to have on the restrained party and sets the undertaking at that sum.  (*White v. Davis* (2003) 30 Cal.4th 528, 551; *ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 14 (*ABBA*).)

It is undisputed that plaintiffs did not post an undertaking and the court did not require one.  Defendants argue that the preliminary injunction is void in the absence of an undertaking.  Plaintiffs maintain that defendants waived the claim.

### A.  The Undertaking May Be Waived

Compliance with Code of Civil Procedure section 529 "is typically a necessary condition to obtain a valid preliminary injunction."  (*Stevenson v. City of Sacramento* (2020) 55 Cal.App.5th 545, 551.)  However, "rights conferred by statute may be waived unless specific statutory provisions prohibit waiver."  (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1048, fn. 4).  "Any one may waive the advantage of a law intended solely for his benefit."  (Civ. Code, § 3513.)

Bonds for injunctions may be waived.  (*Smith*, *supra*, 182 Cal.App.4th at pp. 740–742.)  Section 529 benefits enjoined persons like defendants and does not prohibit waiver of that benefit.  Defendants concede the point by writing, the " 'bond requirement of section 529 can be waived or forfeited by the party to be enjoined' " and " '[t]his can be done orally or in writing, or it may be "inferred from [a party's] conduct," ' " quoting *Committee to Support Recall of Gascon v. Logan* (2023) 94 Cal.App.5th 352, 372 (*Gascon*).  In *City of Los Angeles v. Superior Court* (1940) 15 Cal.2d 16, 23, our Supreme Court concluded that petitioners waived their right to a bond, owing to the passage of time after the injunction issued.

8

The Bond and Undertaking Law (§ 995.010 et seq.) governs all bonds and undertakings required by statute, including those in section 529. (§ 995.020, subd. (a); *Stevenson v. City of Sacramento, supra,* 55 Cal.App.5th at p. 554.) Objections to bonds relating to an action or proceeding require a written motion. (§§ 995.910, 995.930, subd. (a).) "If no objection is made within the time required by statute, the beneficiary *is deemed to have waived all objections* except upon a showing of good cause for failure to make the objection within the time required by statute." (§ 995.930, subd. (c), italics added.) A person enjoined by a preliminary injunction must object to an undertaking "[w]ithin five days after the service of the injunction." (§ 529, subd. (a).)

"The objection procedure outlined by section 995.930 . . . reduce[s] the likelihood that the trial court will persist in an erroneous failure to comply with its duty to require the posting of a sufficient bond; and [does] so in a way which will provide sufficient notice to the opposing side to meaningfully respond." (*ABBA, supra,* 235 Cal.App.3d at p. 12.) In *ABBA,* the defendants submitted written objections to a proposed preliminary injunction that had no provision for any undertaking, and asked for an undertaking of $315,000. (*Id.* at p. 9.) In that scenario, the defendants did not waive their right to an undertaking because their objection to the lack of a bond was timely and fully presented to the trial court. (*Id.* at pp. 13–14.)

## B. Defendants Waived the Undertaking

In 2022, defendants glancingly mentioned section 529 in supplemental papers. Another eight months passed before the court conducted hearings in 2023. At the hearings, defendants

9

did not propose an undertaking.[5]  They were silent about an undertaking from April 2023 (when the court granted the request for an injunction) to May 2023 (when the injunction issued).

Defendants filed a premature notice of appeal three days after plaintiffs' request for an injunction was granted.  An injunction order was not entered until two weeks later.  The order requiring a person to refrain from a particular act is final and appealable, *not* the interlocutory order granting a request for an injunction, which does not compel a party to do anything. (*Ezer v. Fuchsloch*, *supra*, 99 Cal.App.3d at pp. 856–857.)

Defendants squandered multiple opportunities to demand a bond.  First, at hearings on the request for an injunction; second, when the court granted the request for an injunction on April 17, 2023; and third, when the court issued the injunction on May 4. Significantly, they did not object in the trial court to the lack of an undertaking with "an estimate of the amount that would be sufficient."  (§§ 529, subd. (a), 995.930, subd. (a).)[6]

Defendants " 'sav[ed] the injunction bond issue for appeal when it could have been dealt with more efficiently in the lower court with much less detriment to the party who obtained the injunction.' " (*Gascon, supra,* 94 Cal.App.5th at p. 373; *Smith, supra,* 182 Cal.App.4th at pp. 748–749.)  Defendants were more interested in halting further court proceedings on the merits of

---

[5] No transcript was provided, but counsel declared that defendants did not raise the bond requirement at the hearings.

[6] We take judicial notice that defendants asked the trial court to dissolve the injunction during this appeal, citing the lack of an undertaking.  By then, the trial court lacked jurisdiction. (*Royals v. Lu* (2022) 81 Cal.App.5th 328, 342 [trial court cannot vacate, modify, or change an order that has been appealed].)

plaintiffs' complaint by taking a premature appeal than they were in obtaining a bond from the trial court.  We decline to reward this strategy.  Defendants waived any objection to the lack of an undertaking.  (§ 995.930, subd. (c).)

### 3.  Issuance of the Injunction

We determine whether the court abused its discretion in evaluating (1) the likelihood plaintiff will prevail on the merits at trial, and (2) the interim harm plaintiff is likely to sustain if the injunction is denied versus the harm the defendant is likely to suffer if the injunction issues.  (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109; *White v. Davis, supra,* 30 Cal.4th at p. 554.)

### A.  Likelihood of Prevailing

Defendants argue that plaintiffs' injunction request is based solely on a breach of contract, i.e., the continued operation of Ideal beyond the term specified in the Agreement.  Defendants maintain that plaintiffs are unlikely to succeed on the merits of their contract claim because the termination clause in the Agreement is ambiguous.  It reads, "The Company's operating term is tentatively set for three years.  Upon expiration of the three-year term, if no two or more investors request for an extension, the Company will dissolve."

Defendants focus on the word "tentatively" in the termination clause, suggesting it "could mean that the parties either intended to 'tentatively set' the duration of Ideal at the time of contracting, or that Ideal would continue to operate until the Parties decided to cease operations."  Defendants believe that "Ideal would continue to operate indefinitely upon request for an extension."  They then conclude that "at least two investors of

11

Ideal requested an extension, and thus, Ideal's operating term never expired."

Although the Agreement places Ideal's operative term at "tentatively" three years, the next sentence specifies that at the three-year mark, Ideal "will dissolve" unless two or more investors request an extension. There is no ambiguity in the plain language of the Agreement: Ideal must dissolve after three years unless there is a consensus to continue the business. The plain language governs. (Civ. Code, § 1638.)

The issue boils down to a factual dispute. Cao declared that in October 2021, the parties "had numerous discussions about extending the dissolution timeframe" and "agreed the company would continue operating." By contrast, Ma declared that the three principals "have not agreed to extend the operations of Ideal Investment Corporation, except to preserve the status quo for purposes of dissolution."

The trial court resolved the factual dispute in favor of plaintiffs, finding they are likely to prevail because defendants continued business operations in defiance of the Agreement's termination clause. The court did not find that two investors requested an extension. The record shows that plaintiffs and their attorney met with Cao, objected to the lack of formal notice, and refused to discuss an extension. The parties' relationship was fraught—Cao allegedly brandished a gun and threatened to kill Ma's family, Ma's husband allegedly threatened Cao with a hammer and refused to deposit checks into Ideal's bank account. The court could reasonably infer that the parties were unlikely to agree to extend the Agreement and operate Ideal together.

In sum, there is no evidence of a request to extend operations, as required by the Agreement. The trial court's

resolution of disputed facts is supported by substantial evidence. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 408–409.)

### B. Balance of Harm

Plaintiffs argued that they will be harmed if Cao transfers Ideal's equipment and assets. They have no documentation of Ideal's assets and it will be difficult to track down equipment once it is sold, or to pursue lawsuits in multiple jurisdictions. Defendants claimed that transferring forklifts and other equipment did not harm plaintiffs because it was simply going to warehouses in other states.

The trial court found that the balance of harm favors plaintiffs. It agreed that plaintiffs would suffer greater interim harm by "losing track of assets and equipment, which may be transferred to unknown parties and locations, necessitating inefficient lawsuits and a waste of judicial resources to track down." The court expressly rejected the contention that "Plaintiffs should not be allowed to ask that assets and documents remain within the corporation during the interim."

The court's determination is supported by the evidence. The Agreement specified that Ideal "will dissolve" in October 2021 absent an agreement to continue the business. Instead of winding up Ideal, Cao continued to operate it despite tensions with his co-owners. In discovery, he denied having a list of equipment owned by Ideal, making it impossible to know if defendants are selling or hiding equipment or other assets. Under the circumstances, the court reasonably preserved the status quo by preventing a transfer or sale of Ideal's assets, which would reduce the company's value and deprive plaintiffs of a fair price for their investment.

13

**DISPOSITION**

The order granting a preliminary injunction is affirmed. Appellants to bear all costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.