Filed 7/24/23  Wash v. Wash CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARIA WASH,<br><br>    Plaintiff, Cross-defendant and<br>    Respondent,<br><br>              v.<br><br>JOHN WASH,<br><br>    Defendant, Cross-complainant and<br>    Appellant. | F080399<br><br>(Super. Ct. No. 09CECG00933)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

John Wash, in pro. per., for Defendant, Cross-complainant and Appellant.

Daniel L. Harralson Law Office and Daniel L. Harralson for Plaintiff, Cross-defendant and Respondent.

-ooOoo-

This lawsuit began in 2009 and involves a family dispute over a 100-acre parcel of land and related farming operations.  In August 2010, after a mediation, appellant John Wash entered into a written settlement agreement with his brother, Thomas Wash, and

his brother's wife, Maria Wash. In 2015, after Thomas's death, Maria filed a motion under Code of Civil Procedure section 664.6[1] to enforce the settlement agreement. The trial court granted the motion and entered a judgment that attached the settlement agreement and incorporated its terms. In 2017, we affirmed that judgment, which is now final and, thus, no longer subject to challenge.

In 2019, both John and Maria filed motions relating to the enforcement of terms in the judgment. The trial court granted Maria's motion and appointed a receiver to implement the partition of the 100-acre parcel. After the receiver filed a report and the parties submitted additional briefing, the trial court (1) ordered the partition of the 100-acre tract into a parcel of approximately 25 acres for John, a parcel of equal size for Maria; and (2) authorized Maria's purchase of the remaining land at a price of $13,500 per acre.

John appealed, contending the trial court exceeded its authority because the order omitted some of the terms of the settlement agreement incorporated into the judgment and modified others. On a procedural point, John argues the trial court should not have allowed the receiver to act without filing an oath as required by statute and the appointment order. John also argues the trial court (1) misapplied the method of dividing the 100-acre parcel, which should have resulted in Maria and him receiving parcels of approximately 28.5 acres, not 25 acres; (2) should have ordered the recording of an easement for the use of the existing driveway by both parcels; (3) should not have concluded Maria still had the right to purchase the remaining third parcel or, alternatively, failed to abide by the terms of the judgment requiring an appraisal when it set the option price at $13,500 per acre; (4) erred in concluding Maria was the prevailing party for purposes of awarding attorney fees and costs; and (5) exceeded the terms of the

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

judgment by awarding Maria certain taxes, fees, and other expenses related to the 100-acre parcel.

First, we conclude John forfeited the issue about the receiver's oath by failing to raise it during proceedings in the trial court when it could have been corrected. Second, the trial court correctly resolved the ambiguities in the terms of the judgment when it decided where to locate the lot line between the parcels allotted to John and Maria. Third, as argued by John, the terms of the judgment plainly require a driveway easement to be recorded when the property is partitioned, and Maria has provided no legal authority allowing the order enforcing the terms of a judgment to omit the easement. Thus, a provision for the driveway easement should have been included in the order addressing the partition of the 100-acre parcel. Fourth, the trial court did not err in concluding Maria still had a right to purchase the remaining third parcel and in setting the option price. Fifth, the judgment does not provide for the award of certain taxes, fees and other expenses to Maria, and Maria's moving papers did not request such an award. Consequently, the award must be vacated. Sixth, because the order is partially reversed due to the omission of a driveway easement, the prevailing party determination will be vacated and, on remand, the trial court must decide anew which party prevailed and is entitled to recover attorney fees and legal expenses.

From a broader perspective, the foregoing conclusions were made after a review limited by the applicable rules of appellate procedure and constrained by the appellate record. As a result, some arguments and assertions of fact made by John lack sufficient support in the record to carry his burden of demonstrating reversible error.

We therefore affirm the order in part, reverse the order in part, and remand for further proceedings.

## FACTS

The following facts about the parties and the real property are taken from our unpublished opinion in *Maria Wash v. John Wash* (Sept. 12, 2017, F071135), which

3.

affirmed the judgment entered pursuant to a motion under section 664.6 to enforce a settlement agreement. Robert Wash, who died in 2005, had two sons, John Wash and Thomas Wash. Thomas married Maria S. Banda Banales and they had two sons.

Thomas and John inherited from their father in 2005 approximately 100 acres of agricultural land located at 3535 and 3473 South Temperance Avenue, Fresno, which is referred to in this opinion as "the 100 acres." The 100 acres was the family farm and the childhood home of John and Thomas.

In 1998, John, Thomas and Maria formed a general partnership named "Wash and Wash Partnership" (Partnership). The Partnership's primary purpose was the acquisition of farm property, together with the leasing, operating, managing and farming that property. The partnership agreement stated the initial contributions included two 20-acre parcels located on East Central Avenue, which is not involved in this appeal. The combined parcels are referred to in this opinion as "the 40 acres."

This litigation involves the partnership, its assets, and primarily the 100 acres. Thomas and Maria operated a tree and nursery business on the 100 acres. In addition, the 100 acres contained approximately 77 acres of citrus orchards. Maria's residence is on the 100 acres, on the south side of the driveway that serves both residences. John's residence also is on the 100 acres, on the north side of the driveway.

## PROCEEDINGS

This litigation began in March 2009 when Thomas and Maria filed a complaint against John that the Fresno County Superior Court assigned case No. 09CECG00933. The complaint sought dissolution of the Partnership, an accounting of its affairs, and the partition of the 40 acres into two 20-acre parcels.

In August 2009, John filed an answer and a cross-complaint seeking dissolution of the partnership, an accounting, damages for waste, and partition of the 100 acres. John held an undivided 50 percent ownership interest in the 100 acres and Thomas and Maria held the other undivided 50 percent ownership interest.

4.

To resolve their disputes, the parties retained the services of a mediator. The mediation was held on August 24, 2010, and resulted in a four-page settlement agreement signed by the parties, their attorneys, and the mediator. The relevant terms of the agreement are quoted later in this opinion. The parties had difficulties implementing the settlement agreement—difficulties that need not be chronicled in detail here other than to note that Thomas died in November 2011, at the age of 59.

*Enforcement of Settlement*

In January 2015, Maria moved for an order to enforce the settlement. John opposed the motion, asserting numerous grounds including that the agreement was unenforceable, was impossible to perform, was missing material terms, and was uncertain.

On January 27, 2015, the motion was argued and submitted. The trial court (then judge, now justice, Mark W. Snauffer) granted the motion to enforce the settlement agreement and directed that its tentative ruling would become the order of the court. The court referred to its authority under section 664.6, found the written agreement had been signed by the parties and their attorneys, determined the agreement contained all the material terms of the parties' agreement, and concluded the agreement was valid and enforceable. In particular, the court considered John's argument that the settlement agreement was unenforceable because it did not state what would happen if the option to purchase John's one-half interest in the remainder of the 100 acres was not exercised. The court concluded the parties intended that John would keep his one-half interest "if Thomas and Maria did not choose to buy the parcel." As to recording a driveway easement and delivering a key to any driveway gate, the court concluded "these tasks can still be performed, so the alleged fact that they have not yet been performed does not render the agreement unenforceable." In response to John's argument that changed circumstances in the four and a half years since execution rendered it impractical and unjust to enforce the agreement, the court stated "it is [John's] own refusal to cooperate

5.

with the terms of the agreement that has largely caused the delay in performing the agreement's terms" and it would "not reward [John] for his own bad conduct by refusing to enforce the otherwise valid settlement agreement simply because [John] has obstructed the performance of the agreement's terms for several years."

On February 13, 2015, the trial court entered a judgment to implement its order granting Maria's motion to enforce the settlement agreement pursuant to section 664.6. This judgment is the foundation for the postjudgment orders challenged in this appeal. The judgment awarded Maria attorney fees of $2,460 and decreed the following:

> "Plaintiffs, THOMAS WASH (Deceased, by and through MARIA WASH his Substitute in Interest) and MARIA WASH have judgment against Defendant JOHN WASH pursuant to the terms set out in the written settlement agreement dated August 24, 2010, a copy of which is Attached hereto as Exhibit 'A' and incorporated herein by reference."[2]

John appealed and this court affirmed the judgment that had been entered pursuant to section 664.6. (*Maria Wash v. John Wash* (Sep. 12, 2017, F071135) [nonpub. opn.].) Our opinion stated that "we interpret the judgment and its attachment to mean the parties have requested the court to retain jurisdiction over them for purposes of enforcing the settlement agreement until its terms have been performed in full. It follows that, if a party refuses to perform an obligation under the settlement agreement after the judgment has become final, then the other party may come before the superior court and obtain an order enforcing that obligation. Consequently, we conclude John's arguments about purported deficiencies in the judgment do not identify reversible error. The trial court has the authority to enforce the terms of the agreement in subsequent proceedings."

---

[2]    By incorporating the settlement agreement into the judgment, the trial court acted in accordance with its statutory authority to "enter judgment pursuant to the terms of the settlement." (§ 664.6, subd. (a).)  Thus, it adhered to the principle that a "court is powerless to impose on the parties more restrictive or less restrictive or different terms than those contained in their settlement agreement." (*Hernandez v. Board of Education* (2004) 126 Cal.App.4th 1161, 1176.)

(*Maria Wash v. John Wash* (Sep. 12, 2017, F071135) at p. *32 [nonpub. opn.].)  In retrospect, the last sentence could be regarded as vague because it refers to enforcing the terms of the agreement rather than referring to the judgment.  The following italicized inserts would have clarified the sentence without changing this court's underlying intent—that is, they would make explicit that which was implied, causing the sentence to read:  "The trial court has the authority to enforce the terms of the agreement *now incorporated in the judgment* in subsequent proceedings *to enforce the judgment*."

We addressed the foregoing quoted language from our 2017 opinion in case No. F071135 and in John's subsequent appeal from the trial court's order determining Maria was the prevailing party in the appeal (Civ. Code, § 1717) and awarding her $9,321 for attorney fees.  (*Maria Wash v. John Wash* (Mar. 11, 2021, F077486) [nonpub. opn.])  In affirming the fee award, we stated:

> "We recognize our prior opinion stated that (1) the trial court retained jurisdiction over the parties for purposes of enforcing the settlement agreement until its terms have been fully performed and (2) either party could come before the trial court and obtain an order enforcing an obligation in the settlement agreement if the other party refused to perform that obligation.  In our view, that statement was far from profound and changed nothing.  It simply described the procedure for handling future disputes should they arise.  Accordingly, our opinion and the statements it contained did not change (1) the terms of the settlement, (2) the terms of the judgment enforcing that settlement, or (3) the rules of law *for enforcing a judgment*.  In short, [the opinion in case No. F071135] provided John with nothing that he did not already have.  Therefore, we reject John's view that he prevailed in the appeal." (*Maria Wash v. John Wash* (Mar. 11, 2021, F077486) [nonpub. opn.] at p. *10, italics added.)

Our opinion in the attorney fees appeal indicates that section 664.6's procedures for enforcing a settlement agreement and obtaining a judgment have been completed.  It follows that section 664.6's procedures have no *direct* bearing on the issues presented in the current appeal.  Rather, this case has reached the procedural stage where the judgment incorporating the settlement agreement is final and the rules of law for enforcing a final

7.

judgment apply. (See *Howeth v. Coffelt* (2017) 18 Cal.App.5th 126, 134; see generally, §§ 680.010–724.260 [California's Enforcement of Judgments Law].)[3]

In December 2017, remittitur was issued after our affirmance of the judgment that incorporated the settlement agreement, making the judgment final at both the trial court and appellate court level. The parties, however, were unable to implement the terms of the judgment and further disputes arose.

*Enforcing the Final Judgment*

In March 2019, John filed a "MOTION TO ENFORCE SETTLEMENT AGREEMENT AND JUDGMENT" along with supporting declarations and a request for judicial notice. The points and authorities filed by John's attorney asserted the settlement

---

[3]    We make this point about the procedural posture of this case and the rules of law that apply at this stage because John's opening brief raises many arguments that begin with the assertion that the trial court exceeded its authority under section 664.6 when the court made a particular decision. Section 664.6 does not apply to the postjudgment proceedings in this case. Thus, we interpret John's arguments as asserting the trial court exceeded its authority under the rules of law that apply to the interpretation and enforcement of a final judgment. This determination has little impact on the *interpretation* of the terms of the settlement agreement incorporated into the final judgment because the rules for interpreting a judgment are essentially the same as the rules for interpreting a settlement agreement. (See pt. II.B.1., *post.*) In contrast, the law governing the enforcement of a judgment is not the same as the law governing the enforcement of a contract. For purposes of Government Code section 68081, we conclude (1) the issues regarding the rules of law governing the interpretation and the enforcement of the final judgment were "fairly included within the issues actually raised" (*People v. Alice* (2007) 41 Cal.4th 668, 677); (2) the parties were afforded an opportunity to present their views on those issues; and (3) supplemental briefing of those issues was not required by Government Code section 68081. (See *Alice*, *supra*, at p. 675 [issue of proper standard of review is present in every case]; *Church Mutual Ins. Co., S.I. v. GuideOne Specialty Mutual Ins. Co.* (2021) 72 Cal.App.5th 1042, 1055, fn. 2 [existence of agency relationship fairly encompassed in the main issue raised in the appeal]; *Gee v. Greyhound Lines, Inc.* (2016) 6 Cal.App.5th 477, 487, fn. 6 [supplemental briefing and rehearing not required].)

agreement was incorporated into the terms of the judgment[4] and, therefore, "enforcing the Settlement Agreement is the same as enforcing the Judgment, and vice versa." Among other things, John requested a court order directing Maria to cooperate in completing a lot line adjustment that would result in him receiving a 28.5 parcel from the 100 acres and Maria receiving a 28.5 acre parcel to the south of his parcel, with the remaining acres sold.[5]

Maria also intended to file a motion related to the judgment, and the parties entered a stipulation continuing the hearing date on John's motion to April 11, 2019, the date reserved for Maria's motion. On March 19, 2019, Maria filed her "MOTION TO APPROVE AGREEMENT TO PARTITION REAL PROPERTY OR IN THE ALTERNATIVE TO ENFORCE PARTITION PROVISION OF JUDGMENT" along with a supporting declaration and request for judicial notice. Maria asserted that she had complied with her obligations and John had "performed none of his obligations under the judgment/settlement agreement." She contended that (1) partitioning the 100 acres into two parcels of approximately 25 acres and a third parcel of approximately 50 acres was objectively reasonable, (2) she intended to exercise her right to purchase John's half interest in the remaining third parcel, and (3) the purchase price should be $13,500 per acre to prevent John from receiving a windfall due to the increase in real estate values while he intentionally delayed the implementation of the settlement.

In response, John filed a declaration addressing Maria's view of how the 100 acres should be partitioned. John contended Maria's proposal did not reflect the terms of the

---

[4]    For the remainder of this opinion, we use the phrase "terms of the judgment" to include the terms of the settlement agreement that were incorporated into the judgment and, as a result, are part of the judgment itself.

[5]    John asserts the 100 acres is approximately 99.38 acres and a surveyor's report erroneously described it as 100.8 acres by including an easement on neighboring property. Accordingly, John states the remaining parcel would be 42.38 acres.

9.

judgment that described the location of the boundary line dividing his parcel from hers. He argued the proper application of that description would result in his parcel being 28.5 acres. John also disputed Maria's assertion that he had intentionally caused numerous delays in implementing the settlement. John asserted Maria "has refused to comply with the terms, has not performed many of the terms, and waited until more than 2 and a half years to file this current request to partition the property under new and different configurations contrary to the agreement."

Maria filed an opposition to John's motion with a supporting declaration. Maria argued her proposed 25/25/50 division of the 100 acres was objectively reasonable because John "will keep his residence and all existing building[s] on his parcel, plus there will be no need to record an easement nor provide a key to the gate for access." Maria's declaration and points and authorities did not directly address John's proposed 28.5/28.5/42.38 division or identify how it failed to comply with the terms of the judgment.

In early April 2019, John filed further papers relating to the pending motions. He argued the boundary line method of partition described in our opinion in case No. F071135 created a 28.5-acre parcel for him, a parcel of 28.5 acres for Maria, and a third, remaining parcel that should be put up for sale with the proceeds evenly divided between Maria and him. John argued Maria no longer had the right to purchase the remaining parcel because she and Thomas did not comply with the term requiring them to initiate an appraisal within 60 days of signing the settlement agreement.

Before the April 11, 2019 hearing, the trial court issued a tentative ruling that is not part of the record on appeal. Sometime on April 11, 2019, John (representing himself) filed a written opposition to the tentative ruling. The opposition described the tentative ruling as (1) denying Maria's motion for a partition into parcels of 25, 25, and 50 acres; (2) granting his motion for a partition in parcels of 28.5, 28.5, and 42.38 acres;

10.

and (3) appointing a receiver to carry out specified terms of the judgment, including the partition and lot line adjustment.

At the start of the April 2019 hearing, the court asked for comments about the tentative. Counsel for Maria stated his disagreement with the tentative ruling and asserted a 25/25/50 split of the 100 acres would best fulfill the objectively reasonable expectations of the parties. Maria's counsel addressed the difficulties of giving each party a 20-acre parcel, which would chop through buildings associated with each parties' residence. He also addressed allocating each party a 28.5-acre parcel and asserted that, because of a deviation in the driveway, the resulting property line would chop through the middle of the driveway as it goes in front of Maria's house. In response, John's counsel objected to these and other factual assertions, stating they should have been put in a declaration, which would have given John an opportunity to respond before the hearing.

After further discussion, John's counsel addressed the issue of the appointment of a receiver, stating that it made sense because there were "too many issues to come in and ask the Court to deal with every single one." The trial court also stated the parties should meet and confer to see if they could agree on who would act as the receiver. When asked by Maria's counsel what issues the receiver would deal with, the court stated: "Everything identified in the tentative."

*Appointment of Receiver*

After the April 2019 hearing, the parties submitted names of persons they were willing to accept as receiver. On June 7, 2019, the trial court filed an order appointing Jim Phillips, one of John's nominees, "as receiver to ensure the lot line adjustment is carried out, the 100 acre parcel is partitioned and the terms of the sales are carried out in accordance with the Judgment." The order required the receiver to "file an oath, under penalty of perjury, to undertake his duties faithfully, with this court" and post a $10,000 undertaking.

11.

A July 12, 2019, entry in the trial court's register of action states, "Undertaking or Bond filed." The register does not include an entry showing the receiver filed an oath.

In August 2019, the trial court issued a minute order directing the receiver to file a report by September 12, 2019, and setting a hearing on the report for September 26, 2019. The receiver's report was filed the day of the hearing, and the court scheduled a status conference on October 24, 2019, and directed counsel to meet and confer regarding any issues raised by the report. Before the status conference, the parties filed responses to the receiver's report. At the status conference, the court approved an accountant, directed each party to pay half, directed the parties to submit further briefing regarding this court's opinion in case No. F071135 addressing the partition and parcel size, and set a hearing on November 7, 2019.

The November 7, 2019 hearing was not reported. The minute order indicates the trial court determined Maria was the prevailing party and directed her counsel to prepare a final order consistent with the court's ruling.[6]

On December 3, 2019, the trial court signed and filed an order after hearing on status conference for receiver's report. The order directed the division of the 100 acres "into three separate par[cels with] sizes of approximately 25 acres, 25 acres and 50.8 acres as outlined in the partition map prepared by [R. W. Greenwood Associates, Inc.], a copy of which is attached hereto as Exhibit 'A.' Based upon said map [John] shall receive the North 25 acre parcel, [Maria] shall receive the 25 acre parcel just south of the

---

[6]  Because the hearing was not reported, John undertook to obtain a settled statement. (Cal. Rules of Court, rule 8.137.) After unsuccessful attempts, the trial court certified a settled statement for the November 7, 2019 hearing in March 2020. The settled statement set forth the trial court's determination that "[t]he court, after careful review of all the matters before it, finds that the 25/25/50 split is consistent with the settlement earlier entered into between the parties and the opinion of the [Fifth] District Court of Appeal." The court also announced that Maria "is deemed the prevailing party and entitled to her attorney fees consistent with the terms of the settlement agreement."

12.

parcel allotted to [John], and the remainder 50.8 acre parcel shall be south of the parcel allotted to [Maria]."

Later that day, John filed a notice of appeal from that postjudgment order.

## DISCUSSION

I. ABSENCE OF AN OATH BY RECEIVER

We begin with a procedural issue relating to the appointment of the receiver. John contends the trial court exceeded its authority when it allowed the receiver to continue without complying with the oath requirement in the statute and in the court's order.

A. Statutory Provisions and the Parties' Contentions

Section 564 authorizes courts to appoint a receiver in certain situations. For instance, the court has the discretionary authority to appoint a receiver after judgment, "to carry the judgment into effect" or "to dispose of the property according to the judgment." (§ 564, subd. (b)(3), (4); see also, §§ 708.610, 708.620 [appointment of receiver to enforce judgment].) Under the foregoing provisions, the trial court did not exceed its statutory authority when it appointed a receiver to implement the partition of the property. (See *Blodgett v. Haddock* (1949) 95 Cal.App.2d 17, 19 [appointment of receiver in action to partition real estate rests within the trial court's discretion].)

Section 567 provides in part: "Before entering upon the duties of a receiver: [¶] (a) The receiver must be sworn to perform the duties faithfully. [¶] (b) The receiver shall give an undertaking to the State of California, in such sum as the court or judge may direct, to the effect that the receiver will faithfully discharge the duties of receiver in the action and obey the orders of the court therein."

Pursuant to section 567, the trial court's order required the receiver to "file an oath, under penalty of perjury, to undertake his duties faithfully, with the court" and post a $10,000 undertaking. John asserts the receiver posted the bond, but did not comply with the oath requirement. John contends the failure to comply with the order and statute

13.

render the order appointing the receiver void or voidable and unenforceable. Alternatively, John contends the receivership was never activated and, therefore, this court should vacate the trial court's orders.

In response, Maria notes the order appointing the receiver was filed on June 7, 2019, a hearing on the receiver's report was held on November 7, 2019, and the written order after that hearing was filed on December 3, 2019. Maria asserts that, after the receiver was appointed until entry of the order after hearing on the receiver's report, John did not object to the appointment or request the trial court make a determination as to whether the appointment was valid. Maria contends John's argument about the lack of an oath violates the principle that issues cannot be raised for the first time on appeal and, therefore, the issue should be deemed waived.[7]

B.      Forfeiture of Receiver's Failure to File an Oath

John has cited no case law or secondary authority addressing whether the failure of a receiver to take or file an oath is a defect that can be forfeited or waived. Similarly, Maria has cited no authority addressing this specific issue. We have located no statute or published California appellate decision addressing whether a party may waive or forfeit a receiver's failure to take or file an oath. Consequently, we consider how general principles of law apply to the requirement that a receiver file an oath.

---

[7]      "[T]he terms 'waiver' and 'forfeiture' have long been used interchangeably. The United States Supreme Court ... observed, however: 'Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right." [Citations.]' [Citation.]" (*People v. Saunders* (1993) 5 Cal.4th 580, 590, fn. 6; see *Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 475–476 [definitions of waiver, estoppel and forfeiture].) Based on these technical definitions of wavier and forfeiture, we will interpret Maria's waiver argument as referring to forfeiture.

14.

One general principle is set forth in Civil Code section 3513 and states: "Anyone may waive the advantage of a law intended solely for his benefit."[8] (See also *Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1049, fn. 4 [recognizing "the established rule that rights conferred by statute may be waived unless specific statutory provisions prohibit waiver"].) Because neither the parties nor this court have identified any specific statutory provision that either authorizes or prohibits waiver or forfeiture of section 567's oath requirement, the principle set forth in *Bickel* supports the inference that the oath requirement may be waived or forfeited.

Other general principles acknowledged by our Supreme Court provide: " 'An appellate court will ordinarily not consider procedural defects or [alleged] erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method .... The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver .... Often, however, the explanation is simply that it is unfair to the trial judge and to the adverse party to take advantage of an error on appeal when it could easily have been corrected at the trial.' " (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1.)

The application of certain general principles to receiverships and oath requirements has been recognized in one secondary authority, which states that the doctrines of waiver, estoppel, or cure of errors may preclude a person from subsequently objecting to irregularities in the appointment of a receiver, including the receiver's failure to take the oath. (75 C.J.S. (2023) Receivers § 77; see *In re Marriage of Davis* (Tex.App. 2012) 418 S.W.3d 684, 689 [contention that trial court erred by not requiring receiver to take an oath before performing his duties was not timely raised in trial court and, thus,

---

**8**     This maxim of jurisprudence was enacted in 1872 and, thus, its use of the term "waiver" may be interpreted broadly to include both waiver and forfeiture as defined in more recent decisions of the California Supreme Court.

was not preserved for appeal]; *Wipf .v Hutterville Hutterian Brethren, Inc.* (S.D. 2013) 834 N.W.2d 324, 334 [receiver took no oath; issue waived].)

Because the absence of a receiver's oath could be easily corrected if raised in the trial court, we conclude a party forfeits the issue by failing to timely raise it in the trial court. (*Doers v. Golden Gate Bridge etc. Dist.*, *supra*, 23 Cal.3d at pp. 184–185, fn. 1.)

Here, John's appellate briefing provides no citations to the appellate record where he objected to the receiver's failure to file an oath before or during the November 7, 2019 hearing. The section in his appellant's reply brief responding to Maria's waiver argument does not specifically address whether he timely raised the receiver's failure to file an oath. Appellate courts do not have a duty to search the record for evidence relating to a point not addressed by an appellant. (See *Levin v. Ligon* (2006) 140 Cal.App.4th 1456, 1486; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 [reviewing court is not required to make an independent, unassisted study of the appellate record].) Nonetheless, our own review of the record has not shown John raised the issue of the receiver's oath in the trial court at or before the November 7, 2019 hearing on the receiver's report. Consequently, we conclude that John forfeited the argument that the receiver failed to file an oath as required by the court's order and section 567, subdivision (a).

John's reply brief challenges the order appointing the receiver on an additional ground that involves the oath. John argues the order is void because the trial court failed to hold a confirmation hearing to determine if the receiver complied with the oath requirement and posted an undertaking in a sufficient amount. "It is elementary that points raised for the first time in a reply brief are not considered by the court." (*Levin v. Ligon*, *supra*, 140 Cal.App.4th at p. 1486.) Consequently, we will not address whether,

in the circumstances of this case, the trial court had a sua sponte[9] obligation to hold a confirmation hearing to determine whether the receiver complied with section 567. In short, John also forfeited that issue.

## II. PARTITION OF THE 100 ACRES

### A. Relevant Documents

#### 1. *Terms of the Judgment*

The judgment addresses the 100 acres in the following four paragraphs:

"Regarding the 100 acres, John is to receive approximately 20 acres described as commencing at Temperance and the North side of the existing driveway straight down going West to the canal in the back of the property (on John's side of the driveway). The parties agree to a recorded easement to use of the existing driveway for both parcels. Thomas and Maria will maintain the easement/driveway at current levels or improve at their sole cost. If Thomas and Maria gate the driveway near their palm tree operation, John will be provided a key and access to the gate and driveway.

"The balance of the remaining acreage is to be divided as follows: Thomas and Maria shall receive an equal amount of acreage right next to John's. Regarding the remaining approximate 60 acres, the parties agree to each retain the services of [a] licensed appraiser who will then in turn select a third licensed appraiser to render a value. Thomas and Maria have the first right of refusal to buy out John's one-half interest in the remaining realty within 60 days of the issuance of the appraisal. The appraiser will be paid for by Thomas and Maria. Parties agree to secure the services of the appraisers within 60 days of this agreement. Should Thomas and Maria execute their option to purchase the remaining acreage, John agrees to finance the purchase at an interest rate of 1% less than the rate obtained by Thomas and Maria of their refinance of the 40 acres for a term not to exceed 15 years in a first position. The parties will execute standard notes and deeds of trust for this loan.

"On John's approximate 20 acres, Thomas and Maria have a palm tree business on approximately 2-3 acres. Those 2-3 acres of palm trees shall remain in the ownership of Thomas and Maria. John agrees to a 10 year

---

[9]      " 'Sua sponte' means 'without prompting or suggestion; on its own motion' '[Latin "of one's own accord; voluntarily"].' (Black's Law Dict. (8th ed.2004), p. 1464, col. 2.)" (*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 99, fn. 2.)

lease on the appx. 2-3 acres for sale or removal by Thomas and Maria or their heirs. At the conclusion of the 10 years, any remaining trees will become John's. In consideration, Thomas and Maria will pay John $1.00 per year due on Jan. 1, 2011. John is entitled to place a well at John's sole expense on the 2-3 acres of palm trees at the back of the 2-3 acres. John will be solely responsible for the cost of power and trenching, if applicable, to the well. If John selects this location to place his well, John agrees that the power will be underground and not obstruct the view. During the lifetime of both Thomas and Maria, John shall not obstruct Thomas and Maria's view, shall not create an eyesore or place any offensive materials on the 2-3 acres. John will have one year from the payment of the partnership real estate to have a well constructed. During the period of time, before the well is operational (the one year period), Thomas and Maria will allow water to John's home and to the acreage that he will own so as to allow irrigation in a culturally appropriate fashion (Regarding watering the Manderins watering 2 days on, 9 days off; Regarding the Beck oranges 2 days watering and 12 days off, Washington Navels, 2 days on and 12 days off, Valencia 2 days on and 14 off). Water costs shall be born by Thomas and Maria until 12/31/2010. Culturally appropriate watering shall commence immediately. Beginning 1/1/2011, John agrees to bear 25% of the monthly diesel fuel bill to operate the pump.

"The parties agree to share the cost of the lot line adjustments equally (50/50) and shall utilize Mr. Greenwood (surveyor)."

### 2. *Order Appointing Receiver*

The parties were not able to complete the partition of the 100 acres in accordance with the judgment. As a result, the trial court ordered the appointment of a receiver "to ensure the lot line adjustment is carried out, the 100 acre parcel is partitioned and the terms of the sale are carried out in accordance with the Judgment." With respect to the partition of the 100 acres, the order stated:

"The receiver is authorized to do all tasks necessary to record the lot line adjustment and effect the partition of the property. If there is a way to partition the property in accordance with the settlement agreement, decisions of this court and the Court of Appeal, such that the parties do not share a driveway, the receiver shall pursue it. Otherwise, the receiver shall record the driveway easement. In either event, the receiver shall address issues related to the maintenance of the driveway."

18.

### 3. Receiver's Report

In July 2019, the receiver viewed the 100 acres. On September 26, 2019, he filed a first status report. The report (1) stated county records showed the property on South Temperance Avenue was 99.98 acres and (2) described the property as in extremely poor condition, with most of the trees dead and most of the outbuildings in need of repair or removal. With respect to the partition, the receiver stated (1) completion would result in John having no access to well water and he had no funds to install a new well; (2) R. W. Greenwood Associates, Inc. informed the receiver that "the costs to finalize the parcel split are $3,429.50 in County fees"; (3) R. W. Greenwood Associates, Inc. would not work with John under any circumstances; and (4) "[t]he Receiver has not pursued the completion of the parcel sp[li]t, simply because there are no funds available to complete it. In the Receiver's opinion the entire property should be sold, which would eliminate all the feuding, destruction of property and possibility of harm to the occupants."

### 4. Parties' Responses to the Report

Maria's response to the receiver's report stated the report was insufficient because it failed to address the specific tasks assigned to the receiver and, furthermore, the recommendation to sell the 100 acres was beyond the jurisdiction of the receiver or the court. Maria asserted the 100 acres should be divided into two 25-acre parcels and a remaining 50-acre parcel and argued such a division was objectively reasonable because it fulfilled practical considerations and the expectations of the parties. Maria also proposed a purchase price for the remaining parcel of $13,500 per acre so that John would not receive a windfall due to an increase in real property values that occurred while he intentionally delayed implementation of the judgment.

John's declaration responding to the receiver's report stated the lot line adjustment should be completed and the Fifth District already had determined that there should be two parcels of approximately 28.5 acres and one parcel of approximately 43.9 acres.

At the October 24, 2019 status conference, the trial court requested further briefing regarding the effect of this court's opinion in case No. F071135 on the issues of the partition and parcel size.

Maria's brief asserted the opinion did not determine the parcel size was to be 28.5 acres, but stated in dictum that using the boundary description set forth in the judgment would result in lots about 28.5 acres in size. Maria argued that applying the boundary method resulted in a 25/25/50 split of the 100 acres and referred to the language in the judgment stating the boundary was to commence at Temperance Avenue on the north side of the existing driveway and go straight west to the back of the property. To support this argument, Maria presented a parcel map prepared by R. W. Greenwood Associates, Inc. that took "into consideration the mouth of the driveway and the turning radius needed for big trucks to enter the property." Maria stated the edge of the driveway's mouth was used as the starting point for the dividing line because the mouth is the portion of the driveway that intersects Temperance Avenue.

John's brief quoted our opinion's references to parcels of 28.5 acres and argued (1) Maria was estopped from seeking a lot line adjustment contrary to the terms of the judgment and (2) the appellate ruling was law of the case. John also contended that the only tentative parcel map consistent with the terms of the judgment was the map showing two 28.5-acre parcels.

At the November 7, 2019 hearing, the trial court resolved the parties' dispute about the size of the parcels by finding that the division of the 100 acres that allows for two parcels of approximately 25 acres and a remaining parcel of approximately 50.8 acres "would practically fulfill the considerations of the parties and is most consistent with the Judgment/Settlement Agreement filed February 13, 2015 and the Appellate Court Decision, filed September 12, 2017."

B.     <u>Interpreting Judgments</u>

    *1.*     *Basic Principles*

The first step in analyzing whether the trial court erred in adopting a 25/25/50 split of the 100 acres is to identify the rules of law that govern the interpretation of the terms of the judgment. As background for our discussion of California law, we quote the following summary of cases from across the country:

> "It is a general rule that an order, judgment, or decree, entered by the court upon the consent of the parties litigant, being in the nature of a contract to which the court has given its formal approval, cannot subsequently be opened, changed, or set aside without the assent of the parties, in the absence of fraud, mutual mistake, or actual absence of consent, and then only by an appropriate legal proceeding." (Annot. *Power to Open or Modify Consent Judgment* (1942) 139 A.L.R. 421.)

California courts have long recognized that the rules for determining the meaning of a judgment are the same as the rules for determining the meaning of other writings. (*Estate of Careaga* (1964) 61 Cal.2d 471, 475; *In re Ambrose* (1887) 72 Cal. 398, 401; *Dow v. Lassen Irrigations Co.* (2013) 216 Cal.App.4th 766, 780; *Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1205; *People v. Landon White Bail Bonds* (1991) 234 Cal.App.3d 66, 76; *Verner v. Verner* (1978) 77 Cal.App.3d 718, 724.)

The principles that apply to a judgment that incorporates the parties' settlement agreement were discussed in *Stevens v. Stevens* (1968) 268 Cal.App.2d 426 (*Stevens*). In that case, an ex-wife argued that a judgment in a dissolution proceeding that incorporated a property settlement agreement should be treated as a contract, and the judgment should be vacated because her former husband failed to fully perform under the property settlement agreement. (*Id.* at p. 435.) The appellate court rejected this argument, concluding that although a consent judgment is construed as a contract, it may be vacated only on grounds applicable to all other judgments. (*Id.* at p. 436.) The court referred to two cases and stated, "they do not hold that consent judgments are contracts for purposes *other than* interpretation of ambiguities." (*Ibid.*, italics added.)

21.

In *In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434 (*Iberti*), the appellate court stated: "Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretation[ ] of contracts generally. (Civ. Code, § 1635 et seq.; [citations].)" (*Iberti, supra*, at p. 1439.) Under California law, the first step in analyzing the meaning of a contract is to determine whether the language is ambiguous—that is, reasonably susceptible to more than one meaning. (*Joseph v. City of Atwater* (2022) 74 Cal.App.5th 974, 982 [court's threshold question when interpreting a contract is whether the writing is ambiguous].) Whether an ambiguity exists is a question of law subject to independent review on appeal. (*Ibid.*)

### 2. Resolving Ambiguities

In determining whether the text of an agreement is ambiguous, courts provisionally receive all credible evidence concerning the parties' intentions. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) If the extrinsic evidence supports the determination that the text is reasonably susceptible to more than one interpretation, it is admitted to aid in the second step of the inquiry—interpreting the contract (i.e., resolving the ambiguity). (*Ibid.*)

Accordingly, the court in *Iberti* stated that, "[p]rovided it supports a meaning to which the language is reasonably susceptible, extrinsic evidence is admissible to prove the parties' intent as to ambiguous terms in a marital settlement agreement. (Code Civ. Proc., § 1856, subd. (g); [citations].)" (*Iberti, supra*, 55 Cal.App.4th at pp. 1439–1440.) Conversely, "extrinsic evidence cannot be relied on to support a meaning to which the agreement is not reasonably susceptible." (*Id.* at p. 1440.) "When the language of the judgment incorporating the … settlement agreement is clear, explicit, and unequivocal, and there is no ambiguity, the court will enforce the express language." (*Ibid.*) Thus, when interpreting a judgment that incorporates a property settlement agreement, the court

may properly refer to the circumstances surrounding the making of the judgment. (*In re Gideon* (1958) 157 Cal.App.2d 133, 136–137.)

C.      Identifying the Boundary Line for the Partition

The terms of the judgment set forth the method for determining the boundary between the parcel allocated to John and the parcel allocated to Maria in the following sentence: "Regarding the 100 acres, John is to receive approximately 20 acres described as commencing at Temperance and the North side of the existing driveway straight down going West to the canal in the back of the property (on John's side of the driveway)."

1.      *Interpretation of the Opinion in Case No. F071135*

Our opinion in case No. F071135 stated the sentence's "text sets forth the method for determining the boundaries of John's parcel, which parcel would contain all of the land on the north side of the existing driveway between Temperance Avenue (the eastern boundary) and the canal (the western boundary) – land that amounts to about 28.5 acres."[10]  We addressed John's argument that the provision was unenforceable because of the conflict between the estimate of approximately 20 acres and the method for determining the boundaries, which created a parcel of approximately 28.5 acres.  We concluded:

> "[T]he trial court correctly decided controlling weight should be given to *the method* for dividing the property and not *the estimate* of the size of John's parcel.  Giving precedence to the method is objectively reasonable in the circumstances because it fulfills the practical considerations of providing John with all of his yard and the irrigations systems.  In addition, the method is not inherently flexible, while the phrase 'approximately 20 acres' allows flexibility in the size of the parcel John ultimately would receive.  Consequently, the trial court reasonably could determine the method for determining the boundaries of John's parcel was more important than the 20-acre estimate in defining the intentions of the parties

---

[10]     The other three places the opinion used the term "28.5 acres" did not include the modifier "about."

23.

and, therefore, that provision was to take precedence over the 20-acre estimate."

When the opinion is read in light of the issues raised by the parties, the arguments presented on those issues, and the record on appeal, it is not objectively reasonable to interpret the opinion to mean that John must receive 28.5 acres when the boundary method is applied. In particular, the specific questions of (1) the precise location of "the North side of the existing driveway" and (2) how to apply the language for a boundary line that went "straight" west to the canal, to a driveway that was not straight, were not raised by the parties or considered by this court.

Accordingly, we reject John's argument that the doctrine of the law of the case required the trial court to adopt an interpretation of the judgment that resulted in him receiving a parcel containing 28.5 acres. "The law of the case doctrine states that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal ....' " (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892–893.) Our opinion did not establish a principle or rule of law requiring that John receive a parcel of 28.5 acres when the boundary method was applied to the facts of the case.

### 2. Interpretation of the Boundary Method

Next, we consider whether the trial court properly interpreted the boundary method contained in the judgment. We start with the phrase "the North side of the existing driveway" and ask the threshold question of whether it is ambiguous. We conclude it is ambiguous because the parties have presented two reasonable, conflicting interpretations. John argues, in effect, that the boundary line should run along the driveway's edge rather than be placed further north to take into account the width of the driveway's mouth at Temperance Avenue. This interpretation produces a parcel of approximately 28.5 acres. In contrast, Maria argues the northern most part of the

driveway's mouth connecting to Temperance Avenue identifies the place where the boundary line is to commence. We regard each interpretation as reasonable, and therefore conclude the phrase "the North side of the existing driveway" is ambiguous as to the boundary line's precise starting point on Temperance Avenue.

To resolve this ambiguity, we must determine the mutual intention of the parties by applying an objective standard to the parties' outward manifestations or expressions of their intent—namely, the text of their settlement agreement that was incorporated into the judgment, which we interpret as a whole, rather than considering words, phrases, or sentences in isolation. (See *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265.) We conclude Maria has presented the more reasonable interpretation of the phrase "the North side of the existing driveway" for the following reasons.

First, that interpretation generates a boundary line that is both straight and is north of the entire driveway (i.e., both its eastern part and the western part in front of Maria's house). As a result, this interpretation avoids the problem of the boundary running down the middle of the driveway in front of Maria's house. Such a line would not be entirely on the north side of the existing driveway as required by the judgment.

Second, placing all of the driveway's mouth on Maria's parcel is consistent with the provision that requires Maria to maintain the driveway at current levels or improve it at her sole cost. Putting part of the driveway's mouth on John's property would mean that neither party would have an explicit obligation to maintain that portion of the mouth and would create the possibility of obstructions being placed on there. The more reasonable interpretation is to place control of the entire mouth with the party who has the obligation to maintain the driveway.

Consequently, we conclude the trial court properly interpreted the provision in the judgment for determining the location of the boundary line between the parcels of John and Maria.

### 3. Application of Interpretation to the Facts

Next, we consider whether the trial court properly applied the interpretation that the boundary line was to begin at the north side of the driveway's mouth to the facts of the case.[11] This question can be rephrased as whether substantial evidence supports the trial court's implied finding of fact as to the location of the north side of the driveway's mouth. "Under the doctrine of implied findings, an appellate court 'presumes the trial court made all necessary findings supported by substantial evidence.'" (*Robinson v. Superior Court* (2023) 88 Cal.App.5th 1144, 1170; see *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711 [substantial evidence standard applied when reviewing trial court's factual findings].) Here, we conclude substantial evidence supports the trial court's implied finding. That evidence includes (1) the four photographs of the driveway's connection with Temperance Avenue attached to the declaration of Daniel L. Harralson filed on October 31, 2019; (2) an aerial photograph of the 100 acres that was an exhibit to Maria's October 31, 2019 request for judicial notice; and (3) the parcel map prepared by R. W. Greenwood Associates, Inc. that includes depictions of the turning radius of bid trucks as it relates to the driveway's entrance.

Based on our conclusion that substantial evidence supports the trial court's implied finding as to the location of the northern edge of the driveway's mouth, we further conclude the trial court properly applied the terms of the judgment relating to the boundary line to the facts of this case.

### III. DRIVEWAY EASEMENT

In the trial court, John filed papers before the November 7, 2019 hearing that quoted the sentence in the judgment stating: "The parties agree to a recorded easement to

---

**11** In footnote 8 of the opinion in case No. F071135, we stated: "Sometimes it is useful to break contractual interpretation into two steps: (1) the determination of the meaning of the particular term, which involves restating the term using other words, and (2) the application of that meaning to the fact pattern presented. (See *Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 390-391 (*Scheenstra*).)"

26.

use of the existing driveway for both parcels." John argued this sentence made "clear that the existing driveway would be subject to an easement for both parties." Notwithstanding the judgment's reference to an easement, the trial court's December 3, 2019 order did not mention a driveway easement.

On appeal, John's opening brief contends the 100 acres "cannot be partitioned without a recorded 'existing' driveway easement for use of both parcels, Maria to maintain the driveway, and Maria to give John a key to the locked gates."[12] John asserts the trial court's partition order contradicts the express terms of the judgment because it does not require a driveway easement to be recorded.

Maria's respondent's brief does not address (1) the terms of the judgment requiring an easement to be recorded or (2) John's argument that the trial court lacked the authority to omit that term or otherwise modify the judgment. Accordingly, she has not provided any authority giving the trial court the power to order a partition that omitted the term in the judgment requiring an easement to be recorded.

Based on the arguments presented here and in the trial court, we conclude John has carried his burden as an appellant of demonstrating an error in the trial court's December 3, 2019 order regarding partition. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [appellant has burden of affirmatively demonstrating prejudicial error].) The language stating the parties' agreement "to a recorded easement to use of the existing driveway for both parcels" is not ambiguous. It clearly requires the recording of a driveway easement.

A trial court lacks the authority to enter a judgment that is different from the terms of the settlement agreement being enforced pursuant to section 664.6. (See *Machado v.*

---

[12] John's reference to maintenance and a key are derived from terms in the judgment that state: "Thomas and Maria will maintain the easement/driveway at current levels or improve at their sole cost. If Thomas and Maria gate the driveway near their palm tree operation, John will be provided a key and access to the gate and driveway."

*Myers* (2019) 39 Cal.App.5th 779, 792 [trial court properly granted § 664.6 motion, but erred by entering a judgment that differed from the settlement agreement]; *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 818 [error for judgment to impose license agreement on one party because substantial evidence did not support the finding that the parties reached an agreement as to license terms].) It logically follows that a trial court may not ignore a term in the judgment when enforcing the judgment in a postjudgment proceeding, *unless applicable law provides a basis for doing so*. (See *Stevens*, *supra*, 268 Cal.App.2d at p. 436.) In the proceedings below, Maria did not identify applicable law that would provide a basis for omitting the easement clearly required by the terms of the judgment.

Therefore, the December 3, 2019 order must be reversed in part and remanded for the trial court to file an amended order that includes a provision for the recording of a driveway easement when the lot line adjustment is recorded, unless on remand Maria establishes that applicable law provides a basis for excluding such a provision. In accordance with the terms of the judgment, the driveway easement will be a nonexclusive right-of-way for use of the driveway that is attached to John's parcel of approximately 25 acres (as the dominant tenement) and laid upon Maria's parcel (as the servient tenement). (See Civ. Code, §§ 801 [right-of-way is a servitude upon land called an easement], 803 [dominant and servient tenements].) We describe the right-of-way for use of the driveway by John's parcel as "nonexclusive" because the terms of the judgment unambiguously demonstrate that Maria's parcel retained the right to use the driveway and also undertook the obligations to maintain the driveway and provide John with a key if a gate is installed. (See generally, Civ. Code, §§ 804–806, 811; 2 Miller & Starr, California Real Estate Forms (2d ed. 2022) § 1:94, pp. 534–545 [form for grant of an access easement].)

IV.     SALE OF THE REMAINING PARCEL

   A.     Option or a Right of First Refusal

      *1.     Contentions*

John contends the trial court erroneously determined the terms of the judgment provided Maria with an option to purchase the third parcel remaining after parcels of equal size were allocated to John and Maria. John argues the judgment refers to a "right of first refusal" and that right was never activated because there was no third-party buyer within the 120 days stated in the judgment. Based on this argument, John contends the court erred in ordering the sale of his one-half interest in the third parcel.

Maria's respondent's brief does not directly address John's argument about the need for a third-party buyer. Instead, her brief counters that argument indirectly by referring to the right as "[t]he right of first refusal option" and "her option to purchase." Under her interpretation of the terms of the judgment, that right could not be asserted until the 100 acres was partitioned. Her approach implies that her ability to exercise the right to purchase the remaining parcel is not conditioned upon an offer to buy from a third party.

      *2.     Definitions*

"A right of first refusal, also called a preemptive right [citation] is 'the "conditional right to acquire ... property, depending on the [owner's] willingness to sell." [Citation.] The holder of the right merely has the preference to purchase the property over other purchasers if the owner of the property "elects to sell the property." [Citation.] The right does not become an option to purchase until the owner of the property voluntarily decides to sell the property and receives a bona fide offer to purchase it from a third party. [Citations.] Normally, the right is enforceable against third persons entering into a contract to buy the property with notice of the holder's right.' " (*Hartzheim v. Valley Land & Cattle Co.* (2007) 153 Cal.App.4th 383, 389.) Generally, "[t]he particular facts and circumstances that give effect to the right depend on the

29.

particular terms of the contract for the right." (*Campbell v. Alger* (1999) 71 Cal.App.4th 200, 207.)

In comparison, the California Supreme Court has described an option to purchase real estate as "a contract containing an irrevocable and continuing offer to sell at a stipulated price within a specified time." (*Pacific Southwest Development Corp. v. Western Pacific Railroad Co.* (1956) 47 Cal.2d 62, 66.) As such, "it conveys no interest in land to the optionee but vests in him only a right in personam to buy at his election." (*Ibid.*) We interpret the term "stipulated price" (*ibid.*) to include both a specified amount and a specified method for determining the amount to be paid.

### 3. *Terms of the Judgment*

"[T]he particular terms of the [judgment] for the right" (*Campbell v. Alger*, *supra*, 71 Cal.App.4th at p. 207) of Maria to purchase the remaining parcel state:

> "Regarding the remaining approximate 60 acres, the parties agree to each retain the services of a[] licensed appraiser who will then in turn select a third licensed appraiser to render a value. Thomas and Maria have the *first right of refusal* to buy out John's one-half interest in the remaining realty within 60 days of the issuance of the appraisal. The appraiser will be paid for by Thomas and Maria. Parties agree to secure the services of the appraisers within 60 days of this agreement. Should Thomas and Maria execute their *option to purchase* the remaining acreage, John agrees to finance the purchase …." (Italics added.)

This language could be regarded as ambiguous because it refers to both a "first right of refusal" and an "option to purchase," which are not the same thing. However, any ambiguity is easily resolved by referring to the other language (i.e., the particular terms) that describes the right. That language clearly provides Maria with the right to elect to purchase the property and does not condition that right on either John's subsequent willingness to sell or John's receipt of an offer from a third party to buy his interest. Instead, the language sets forth the method for determining the price and expresses John's intent to sell at that price. Consequently, we (1) conclude the trial court

30.

correctly characterized Maria's right as an option to purchase the third parcel and (2) reject John's argument that the right to purchase never came into existence because there was no third-party buyer within 120 days.

### B. Expiration of the Option Period

#### 1. Contentions

Alternatively, John argues the trial court erred by determining Maria could exercise the option after it expired. John asserts "the option period expired 120 days from August 24, 2010," which was the date the settlement agreement was signed. Consequently, John contends he had no obligation to sell his one-half interest to Maria and that portion of the court's order should be vacated.

Maria interprets the terms of the judgment differently. She contends the option could not be asserted until the 100 acres was partitioned, implying that the option has not expired.

#### 2. Terms of the Judgment

The terms of the judgment specify a series of steps related to the exercise of the option to purchase. First, the parties agreed "to secure the services of appraisers within 60 days of this agreement." Second, the two appraisers chosen by the parties "will then select a third appraiser." No timeframe was specified for the chosen appraisers to select a third appraiser. Third, the selected appraiser was to "render a value" and issue an appraisal. Again, no timeframe was specified for the completion of this step by the selected appraiser. Fourth, "within 60 days of the issuance of the appraisal," Maria has the right "to buy out John's one-half interest in the remaining realty." Viewed overall, the foregoing procedures do not require Maria to decide whether to buy John's interest until after the appraisal is issued. At that point, she would know the price of John's interest and could make an informed decision about whether or not to buy. In short, the

particular terms defining the option to purchase do not require her to commit to buying the remaining parcel without knowing its price.

### 3. Expiration of the Option

We reject John's argument that the option expired 120 days after August 24, 2010. As described above, there were at least three steps that had to be completed before Maria had 60 days to elect to purchase John's interest. Two of those steps had no timeframe for completion. It is not objectively reasonable to interpret the judgment to mean the parties intended no time to be allocated for the performance of those steps, which were in the hands of the appraisers and not directly controlled by the parties. Accordingly, it is not reasonable to interpret the judgment to mean the option expired 120 days after the settlement agreement was executed.

Having rejected the interpretation that the option expired in 120 days, we next consider John's argument that Thomas and Maria did not proceed with the appraisal process and let the option expire. John supports this argument by citing his declaration, which asserted: "Thomas and Maria waived their first right of refusal by failing to select an appraiser and refusing to participate in the appraiser selection process." Maria's March 2019 declaration responds to this assertion by stating: "The appraisal of the approximate remaining sixty (60) acres could not be completed without first having the new plot line drawn, which was delayed by [John]."

The trial court addressed these conflicting assertions by stating that John "is determined to be the 100% and sole reason for any delay in performance of the partition and exercise of the right to purchase." We review this finding under the substantial evidence standard, which does not allow a reviewing court to reweigh the evidence in the record. (See *Montebello Rose Co. v. Agricultural Labor Relations Bd.* (1981) 119 Cal.App.3d 1, 21, [power of appellate court reviewing findings of a lower tribunal begins and ends with determining whether there is substantial evidence, *contradicted or not*, that

32.

supports the findings].) Here, Maria's declaration, although contradicted, constitutes substantial evidence supporting the trial court's finding. (See *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [testimony of a single witness, even a party, may alone constitute substantial evidence].)

Furthermore, interpreting the judgment as a whole, it is reasonable to infer the parties anticipated that the identification of the lot line between John and Maria's parcel would have proceeded without delay and, thus, would have advanced to the point where the size of the remaining parcel was known and the appraiser could rely on that size in determining the parcel's value. In other words, it is reasonable to interpret the judgment to mean the identification of the lot lines for the three new parcels was an implied condition that had to be satisfied before the selected appraiser could "render a value" for the third parcel. This interpretation is reasonable because it prevents the failure to proceed with the division of the 100 acres from interfering with the appraisal process and thereby thwarting Maria's right to purchase the remaining parcel. Consequently, we conclude the trial court did not err in concluding that Maria did not lose the right to purchase the remaining parcel, regardless of whether that loss is described as a waiver, forfeiture, or the failure of Maria to fulfill a condition precedent.

### 4. Trial Court's 2015 Interpretation

John contends the January 27, 2015 order enforcing the settlement agreement "determined that if Thomas and Maria did not exercise an option, that the parties intended JOHN would keep his remaining acreage. [Citation.] This finding is binding on the postjudgment judge and prohibits him f[ro]m determining and awarding [Maria an] option at $13,500.00/acre nor any other price." John supports this contention by invoking the law of the case doctrine.

The January 2015 order did not include a finding that Maria failed to timely exercise the option or otherwise determine when the option would expire. Consequently,

33.

the order's interpretation of the terms of the settlement agreement (which terms were later incorporated into the judgment) does not support John's argument. Instead, the order only described how the agreement would apply if the option was not exercised. As a result, the December 3, 2019 order determining Maria still had the right to purchase John's interest does not contradict the January 2015 order.

### C. Option Price

John's contention that the trial court exceeded its authority in awarding Maria an option to purchase his one-half interest based on the remaining parcel having a value of $13,500 per acre also includes the argument that, under the express language of the judgment, an appraisal was required to determine the price. Stated another way, when the trial court established the option price, it was not enforcing the terms of the judgment, but was modifying them.

Maria contends "there is substantial evidence to uphold the Court's order setting the option purchase price." She asserts the court relied on its knowledge of the case history and prior findings in determining John was 100 percent responsible for an 11-year delay in completing partition and sale of the third parcel. She also asserts the underlying rationale for the court's decision to set the price was to prevent John from benefiting from his delays. Restated from the opposite perspective, the court set the price to prevent Maria from being harmed by delay—that is, to give her the benefit of the bargain struck when the parties signed the settlement agreement. Maria contends the appraisal report of a probate referee addressing the value of the 100 acres supports the value of $13,500 per acre chosen by the court. That report is dated April 7, 2015, and lists the value of the 100 acres at $1,700,000. In the trial court, Maria argued a value of $17,000 per acre should not be applied to the remaining parcel because, unlike the parcels allocated to John and Maria, it does not contain residences, shop buildings, other improvements, or income producing trees. Maria argued a value of $13,500 per acre was appropriate because the

34.

parties had agreed to that value in setting the price for the buy-out of the 40 acres owned by the partnership.

First, we conclude substantial evidence supports the trial court's factual finding that the value of the remaining parcel, at the time the appraisal contemplated by the settlement agreement would have been performed but for John's delays, was $13,500. That evidence includes the April 2015 probate referee's appraisal report and the purchase price for the 40 acres set in the settlement agreement.

Second, we conclude the trial court did not commit legal error when it determined that the option's purchase price should be based on a per acre value of $13,500. That price is based on an interpretation of the judgment that gives Maria the benefit of her bargain and is an objectively reasonable outcome where the express terms of the judgment do not address how one party's delay in implementing the agreed upon terms should be dealt with. Put another way, it is not objectively reasonable to interpret the terms of the judgment to mean that John gains from the increase in value that accrued during his delay and Maria loses by having to pay for that increase in value.

V.     OTHER MONETARY AWARD

A.     Background

The trial court awarded Maria certain expenses incurred in connection with the 100 acres. Its order stated:

> "Plaintiffs shall recover any and all costs including but not limited to taxes, irrigation fees, fuel costs and insurance, fire service fees and other reasonable costs expended for the maintenance and preservation of the 100 acre property or to accomplish the terms of the Settlement Agreement/Judgement. Said amounts may be included in the Memorandum of Costs filed with the Court and be deducted from any amounts deemed to be owed by [Maria] for purchase of [John's] one-half interest in the 50.8-acre parcel."

The basis for this award is not identified in the record. Maria's motion to approve agreement to partition real property or, in the alternative, to enforce partition provision of

judgment and supporting papers filed on March 19, 2019, did not request such an award and, therefore, did not explain the legal grounds for such an award. The opposition papers Maria filed on March 28, 2019, did not address these points. Similarly, Maria's October 17, 2019 response to the receiver's first status report and her October 31, 2019 brief did not mention an award of taxes, fees and maintenance costs.

The settled statement for the hearing of November 7, 2019, includes no discussion of such an award. Furthermore, our independent review of the terms of the judgment has not identified any provision authorizing an award of taxes, fees, and costs for the maintenance and preservation of the 100 acres.

Because Maria's papers did not request an award of taxes, fees, and costs for the maintenance and preservation of the 100 acres and identify the legal basis for such an award, John did not have notice and an opportunity to contest the award and, therefore, the papers he filed in the trial court did not address the propriety of such an award.

B.      Contentions on Appeal

John's opening brief contends the award of taxes, fees and other costs exceeded the trial court's authority, was not supported by a motion from Maria, and was not an issue addressed at the hearing. John argues the award violated the procedures for enforcing a judgment and his right to due process. He also argues the award was not based on the terms of the settlement agreement incorporated into the judgment and nothing he did constitutes an implied consent to the award.

Like the papers Maria filed in the trial court, her respondent's brief does not mention the award of taxes, fees and other costs of maintaining the 100 acres and, thus, does not identify any legal authority or theory that would make such an award appropriate.

C.    Analysis

We conclude that John has carried his burden as an appellant of demonstrating the award of taxes, fees and other costs of maintaining the 100 acres in the trial court's December 3, 2019 order was reversible error.  (See *Denham v. Superior Court*, *supra*, 2 Cal.3d 557, 564 [appellant's burden on appeal].)  In particular, John has established that (1) the issue of such an award was not raised in the papers Maria filed in the trial court and (2) the terms of the judgment do not state Maria is entitled to such taxes, fees and other costs.  Thus, the order awarding these items cannot be characterized as an order enforcing the terms of the judgment.  As a result, we must vacate the award.  We express no opinion as to whether, in subsequent proceedings after remand, Maria will be able to establish an appropriate ground for such an award.

VI.    PREVAILING PARTY AND AWARD OF ATTORNEY FEES AND COSTS

John contends the trial court exceeded its authority when it determined Maria was the prevailing party for purposes of the provision in the judgment stating that the prevailing party in a proceeding to enforce its terms is entitled to recover "its reasonable attorney fees and legal expenses."  Among other things, John argues that reversal of any part of the order enforcing the terms of the judgment requires reversal of both the prevailing party determination and the award of attorney fees and costs.  John contends that, after remand, the trial court should exercise its discretion and make a fresh determination of who prevailed and is entitled to recover attorney fees and costs.  Maria's appellate briefing does not address what should happen to the prevailing party determination in the event of a partial reversal and remand for further proceedings.

In *Ventas Finance I, LLC v. Franchise Tax Bd.* (2008) 165 Cal.App.4th 1207, the appellate court partially reversed a judgment requiring a refund of taxes paid and remanded to the trial court to order a refund of a lesser amount.  (*Id*. at p. 1233.)  The appellate court also determined the partial reversal required a reversal of the postjudgment award of attorney fees under section 1021.5 because the appellate court

could not say with certainty that the trial court would have exercised its discretion the same way had it known only a partial refund, rather than a full refund, was appropriate. (*Ventas*, *supra*, at pp. 1233–1234.) Consequently, the appellate court remanded for the trial court to exercise its discretion in light of the changed circumstances. (*Id*. at p. 1235; see *City of West Hollywood v. Kihagi* (2017) 16 Cal.App.5th 739, 754–755.)

Based on the foregoing authority and our partial reversal of the December 3, 2019 order, we also reverse the trial court's determination that Maria was the prevailing party and the related award of attorney fees and costs. On remand, "[t]he trial court should exercise its discretion and determine once again which party is entitled to recover attorney fees" and legal expenses. (*City of West Hollywood v. Kihagi*, *supra*, 16 Cal.App.5th at p. 755.)

## DISPOSITION

The December 3, 2019 "ORDER AFTER HEARING ON STATUS CONFERENCE FOR RECEIVER'S REPORT" is affirmed in part and reversed in part and the matter remanded for further proceedings.

In particular, we reverse the trial court's (1) award of taxes, fees and other costs relating to the 100 acres contained in paragraph No. 3 on page 3 of the order, (2) finding Maria was the prevailing party entitled to costs and attorney fees in paragraph No. 3 on page 2 of the order, and (3) the related award of all costs and attorney fees reasonably expended to enforce the judgment contained in paragraph No. 3 on page 3 of the order. As a result, all of paragraph No. 3 on page 3 of the December 3, 2019 order is reversed and vacated.

On remand, the trial court is directed to (1) issue an amended order that requires a driveway easement to be recorded when the lot line adjustment implementing the partition is filed and (2) determine anew which party is entitled to recover attorney fees and legal expenses in accordance with the terms of the judgment.

The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3), (5).)

FRANSON, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


SMITH, J.